1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ARMSTER HAMPTON,

11              Plaintiff,              No. CIV S-06-0966 DFL DAD P

12        vs.

13   P. SAHOTA, et al.,               ORDER

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  Before the court is defendants' February 14, 2007 motion to

18   dismiss the case on the ground that plaintiff failed to exhaust available administrative remedies

19   on his claims prior to bringing this action.  Plaintiff has filed a timely opposition, and defendants

20   have filed a timely reply.  Plaintiff has also filed an unauthorized response to defendants' reply.

21   See E.D. Local Rule 78-230(m).

22                              **BACKGROUND**

23          In his complaint plaintiff alleges that defendants, three medical doctors at CSP-

24   Folsom, have been deliberately indifferent to his medical need for post-thyroidectomy follow-up

25   care in violation of the Eighth Amendment.  Plaintiff's thyroid condition and concerns regarding

26   inadequate medical care began in 1999.  Since then, plaintiff has availed himself of the

1

1    administrative grievance process at each prison at which he has been housed.  Dissatisfied with

2    the responses he has received from prison officials, plaintiff filed this § 1983 action on May 3,

3    2006.  The court ordered service of plaintiff's complaint on defendants Isidro Cardeno, M.D.,

4    Alfredo Dazo, M.D., and Benjamin Lee, M.D., all of whom filed a motion to dismiss on

5    February 14, 2007.[1]

6             In his complaint, plaintiff provides a detailed chronology of the events in support

7    of his Eighth Amendment claim.  In this regard, plaintiff alleges that in December 1999 and

8    January 2003, health-care staff at DVI-Reception Center examined him and detected a lump in

9    his neck and/or an enlarged left thyroid gland.  Plaintiff alleges that although he sought follow-up

10   medical care from the health-care staff, he never received any additional medical treatment at

11   DVI-Reception Center.  Plaintiff also alleges that he filed two inmate appeals, one on December

12   5, 2003, and one on January 6, 2004.  Plaintiff alleges that the DVI-Reception Center's

13   Institutional Appeals Coordinator denied both appeals for technical reasons.  (Compl. at 5a.)

14            On March 30, 2004, plaintiff was transferred to CSP-Corcoran.  At that time, the

15   prison was on emergency lock-down and remained on lock-down until late July.  Plaintiff alleges

16   that normal health-care services were suspended as a result.  Plaintiff also alleges that he

17   repeatedly submitted written requests for medical services, but he did not see anyone from

18   medical staff until September 2004.  Plaintiff alleges that, on September 7, 2004, Dr. Posner

19   ordered tests, x-rays, and scans to determine the cause of the lump in plaintiff's neck.  On

20   October 19, 2004, plaintiff underwent a thyroid scan.  On December 13, 2004, plaintiff

21   underwent a thyroid ultrasound.  Plaintiff learned that he was suffering from a grossly enlarged

22   left thyroid gland.  As plaintiff underwent this series of tests, he filed a grievance to ascertain the

23   /////

24   ———————————

25            [1] Plaintiff listed seven additional defendants in his complaint but made no specific
     allegations against them.  In an order filed on May 3, 2006, this court found plaintiff's claims
26   against defendants John Doe 1, John Doe 2, John Doe 3, P. Sahota, V. Sanchez, D.L. Porter, and
     Koeppe, legally frivolous.

1  results of the tests ordered by Dr. Posner.  On December 16, 2004, plaintiff learned that his

2  appeal had been denied.  (Compl. at 5b.)

3          On January 24, 2005, Dr. Schuster performed a needle aspiration on plaintiff and

4  determined that plaintiff needed surgery as soon as possible to remove his left thyroid gland,

5  which he opined might be papillary carcinoma.  (Compl. at 5c.)  Plaintiff was scheduled for

6  surgery on three separate occasions.  According to plaintiff, each time the surgery was cancelled

7  without explanation.  On June 1, 2005, plaintiff filed another grievance, requesting medical

8  treatment.  Finally, on July 25, 2005, Dr. Schuster performed the total thyroidectomy (Compl. at

9  5c.)

10          After surgery, Dr. Schuster informed plaintiff that further testing would be

11  necessary to determine whether the cancer had spread.  Dr. Schuster informed plaintiff that he

12  would be referred to an oncologist for this purpose.  (Compl. at 5c.)

13          On September 16, 2005, plaintiff was transferred to CSP-Folsom.  On October 5,

14  2005, plaintiff's June 1, 2005 appeal filed at CSP-Corcoran was returned to him because by that

15  time, he had underwent his total thyroidectomy.  The appeal came with a note, stating that

16  plaintiff could file another appeal if he was not satisfied with his medical care.  (Compl. at 5b.)

17          Plaintiff alleges that during his initial medical examination at CSP-Folsom, he

18  informed staff of his medical history and desire for further treatment.  (Compl. at 5c.)  Plaintiff

19  alleges that he saw defendant Dr. Cardeno approximately four times and informed the doctor that

20  he was experiencing pain and wanted to see an oncologist to determine whether the cancer had

21  spread.  Plaintiff also alleges that he told Dr. Cardeno that some of his symptoms could be a

22  result of his levothyroxine (hormone replacement) medication.

23          Plaintiff alleges that his visits with Dr. Cardeno were cursory at best.  At two of

24  the visits, plaintiff alleges that his thyroid test results were not available.  Plaintiff claims that Dr.

25  Cardeno also refused to order oncology treatment, treat plaintiff's pain, or order tests to

26  determine if plaintiff's thyroid cancer had spread and/or if plaintiff had any remaining thyroid

tissue.  Plaintiff also alleges that Dr. Cardeno refused to order tests besides the one to test his thyroid function.  (Compl. at 5d.)

On January 5, 2006, plaintiff saw defendant Dr. Dazo for the first time.  After reviewing plaintiff's thyroid test results, Dr. Dazo informed plaintiff that his thyroid condition had improved, but he was not in target range.  Dr. Dazo prescribed Tylenol for plaintiff's pain, but plaintiff alleges he did not receive it until January 11, 2006.  Plaintiff also alleges that Dr. Dazo refused to order additional tests to determine if plaintiff's cancer had spread and/or if plaintiff had any remaining thyroid tissue.

Subsequently, plaintiff submitted additional health-care requests because he was experiencing fatigue, diminished ability to focus and concentrate, and dry-itchy skin.  Plaintiff saw Dr. Dazo two more times in February 2006.  Plaintiff asked Dr. Dazo to reconsider ordering further tests, but Dr. Dazo refused and merely proceeded to prescribe hydrocortisone cream and hyrdroxyzine for plaintiff's skin.  Dr. Dazo switched plaintiff's Tylenol to naproxine.  Dr. Dazo also ordered another thyroid-function test.

Plaintiff submitted another health-care request to review his thyroid test results and to refill his medication.  On April 7, 2006, plaintiff saw defendant Dr. Lee.  Dr. Lee informed plaintiff that his blood pressure and weight were both up, possibly as a result of the pain plaintiff was experiencing.  Dr. Lee switched plaintiff's pain medication back to Tylenol.  Dr. Lee also ordered a follow-up visit and bi-weekly blood pressure checks.  Dr. Lee did not order any additional tests.  Plaintiff alleges that as a result, he still does not know whether his cancer has spread.

Plaintiff concludes that defendants have exhibited a deliberate indifference to his medical needs in violation of the Eighth Amendment.  Plaintiff seeks injunctive and monetary relief.

/////

/////

**DEFENDANTS' MOTION TO DISMISS**

I.  <u>Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)</u>

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures.  <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  The Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement.  <u>Id.</u> at 741 n.6.  Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal.  <u>Woodford v. Ngo</u>, ___ U.S. ___, 126 S. Ct. 2378, 2382 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Most appeals progress from an informal review through three formal levels of review.  <u>See</u> Cal. Code Regs. tit. 15, § 3084.5.  A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit.  <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005); <u>Bennett v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002).

/////

1    The PLRA exhaustion requirement is not jurisdictional but rather creates an

2  affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.  Jones v.

3  Bock, ___U.S.___, ___, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially

4  plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-

5  19 & nn.9 & 13 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  The

6  defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt , 315 F.3d at

7  1119.  "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court

8  may look beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20.  "I[f] the

9  district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for

10  failure to exhaust–a procedure closely analogous to summary judgment–then the court must

11  assure that [the prisoner] has fair notice of his opportunity to develop a record."[2]  Id. at 1120

12  n.14.  When the district court concludes that the prisoner has not exhausted administrative

13  remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at

14  1120.  On the other hand, "if a complaint contains both good and bad claims, the court proceeds

15  with the good and leaves the bad."  Jones, 127 S. Ct. at 924.

16  II.  Defendants' Motion

17    Defendants contend that plaintiff filed his initial administrative grievance before

18  he saw Drs. Cardeno, Dazo, and Lee.  They therefore conclude that plaintiff never exhausted his

19  Eighth Amendment claims as to them, and this action should be dismissed with prejudice.

20  Specifically, defendants argue that plaintiff did not properly exhaust any of his five medical

21  appeals at CSP-Folsom concerning claims against them prior to filing this lawsuit.  Defendants

22  have attached to their motion declarations by Tracy Hudgins, an Appeals Coordinator at CSP-

23  Folsom and N. Grannis, Chief of Inmate Appeals of the California Department of Corrections

24  and Rehabilitation.  In addition, defendants have attached as exhibits copies of plaintiff's CDCR

25
26    [2]  Plaintiff was notified of the requirements for opposing a motion to dismiss brought
pursuant to non-enumerated Rule 12(b) on December 4, 2006.  (Order filed Dec. 4, 2006 at 3-4.)

appeal records.  Below, the court will address each of the administrative appeals pursued by plaintiff.

### A.  Appeal FSP 05-01516

Defendants argue that the Appeals Office at CSP-Folsom received plaintiff's first appeal relating to his medical care on or about October 20, 2005, assigned it log number FSP 05-01516, and granted it in part.  Defendants allege that this appeal did not grieve the alleged conduct or treatment by Drs. Cardeno, Dazo, or Lee.  (Defs.' Mot. to Dismiss at 7.)  In this grievance, according to defendants, plaintiff only alleged generally that he had not received any follow-up care since his arrival at CSP-Folsom.  Defendants allege that plaintiff did not see Dr. Cardeno for the first time until October 24, 2005, after plaintiff had submitted his grievance. (Defs.' Mot. to Dismiss at 7.)  Plaintiff also did not see Dr. Dazo or Lee for the first time until after he filed his grievance.  (Defs.' Mot. to Dismiss at 7.)

Defendants allege that plaintiff appealed his first-level response to the second level of review.  The Appeals Office received the appeal on or about December 12, 2005 and granted it in part.  The Appeals Office also advised plaintiff that he would continue to receive medical care and treatment as determined by his attending physician.  (Hudgins Decl. at 3.)

Defendants allege that plaintiff appealed the second-level response to the director's level.  The appeal was denied on or about March 24, 2006, and stated that plaintiff's contention that he had not received adequate medical care was refuted by his medical records and professional staff familiar with his medical history.  (Hudgins Decl. at 4.)

### B.  Appeal FSP 06-00315

Defendants allege that the Appeals Office at CSP-Folsom received plaintiff's second appeal relating to his  medical care on or about March 6, 2006, assigned it log number FSP 0-06-00315, and granted it in part.  Plaintiff alleged that he saw Dr. Dazo on February 16, 2006, and Dr. Dazo refused to treat his severe dry-itchy skin.  (Defs.' Mot. to Dismiss at 7); (Hudgins Decl. at 4).

1    Defendants allege that plaintiff appealed his first-level response to the second-

2 level of review on or about May 4, 2006.  On or about June 2, 2006, the Appeals Office denied

3 his appeal.  (Hudgins Decl. at 4.)

4    Defendants allege that plaintiff appealed the second-level response to the

5 director's level on September 14, 2006, more than four months after filing this lawsuit.  The

6 appeal was denied.  (Defs.' Mot. to Dismiss at 7); (Hudgins Decl. at 4).

7    C.  Appeal FSP 06-01385

8    Defendants allege that the Appeals Office received plaintiff's third medical appeal

9 on or about October 19, 2006, more than five months after filing this lawsuit, assigned it log

10 number FSP 0-06-01385, and granted it in part.  Plaintiff alleged that he had seen a doctor with

11 U.C. Davis Medical Center, but he was unable to proceed with the recommended course of

12 action because the doctor had not received his blood test results.  Plaintiff alleged that Dr. Lee

13 was not able to provide the U.C. Davis doctor with the information she needed.  (Hudgins Decl.

14 at 4.)

15    Defendants allege that plaintiff appealed the first-level response to the second

16 level of review on or about December 26, 2006.  The Appeals Office granted it in part and stated

17 that plaintiff was scheduled for a planned treatment and follow-up appointment until completion

18 of his treatment.  (Hudgins Decl. at 4.)

19    D.  Appeal FSP 06-01632

20    Defendants allege that the Appeals Office received plaintiff's fourth medical

21 appeal on or about November 30, 2006, over six and one-half months after filing this lawsuit,

22 assigned it log number FSP 0-06-01632, and granted it in part. Plaintiff alleged that he needed a

23 modified diet.  (Hudgins Decl. at 4.)

24    Defendants allege that, as of February 14, 2007, the Appeals Office had not

25 received a request for second level review.  (Hudgins Decl. at 5.)

26 /////

E.  Appeal FSP 07-00050

Defendants allege that the Appeals Office received plaintiff's fifth medical appeal on or about January 8, 2007, over eight months after filing this lawsuit, assigned it log number FSP 0-07-00050, and granted it in part.  Plaintiff alleged that he did not have access to care.  As of February 22, 2007, the Appeals Office had not issued a decision.  (Hudgins Decl. at 5.)

From this record of administrative grievances, defendants conclude that plaintiff's complaint must be dismissed for failure to exhaust administrative remedies.  Although defendants concede that plaintiff exhausted his first appeal, they maintain that plaintiff filed his initial administrative grievance before he saw defendants Drs. Cardeno, Dazo, and Lee. Accordingly, defendants conclude that plaintiff never exhausted his Eighth Amendment claims as to them and this action should be dismissed with prejudice.

III.  <u>Plaintiff's Opposition</u>

In opposition to defendants' motion, plaintiff claims that he received no meaningful treatment after he filed his first inmate appeal, FSP 05-01516, so he submitted a timely response requesting a second level of review.  Plaintiff alleges that, in this second level appeal, he included specific allegations about Dr. Cardeno's failure to initiate a treatment plan, other than increasing plaintiff's hormone replacement therapy.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 5.)  Plaintiff alleges that he continued to receive inadequate or ineffective treatment, so he appealed to the director's level.  Plaintiff alleges that he included allegations about Dr. Dazo in his appeal at that time because he was the most recent physician to treat plaintiff and was aware of plaintiff's desire to receive adequate health care.  He also included specific allegations about his severe dry-itchy skin, diminished ability to concentrate, and fatigue.  He also grieved the delay in receiving his Tylenol.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 7.)  Plaintiff concludes that he has made specific allegations and references to Dr. Cardeno and Dr. Dazo in his second level appeal and director level appeal.  (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 10.)
/////

1 Plaintiff does not address defendants' other arguments regarding the claimed insufficiency of his

2 second, third, fourth, or fifth appeals.

3 IV.  Defendants' Reply

4            In reply, defendants emphasize that plaintiff acknowledges in his opposition that

5 he did not include specific allegations and references to defendant Dr. Cardeno until he appealed

6 his grievance to the second level of review.  They stress that, even then, plaintiff's allegations

7 were about events that occurred after he filed his initial grievance.  Defendants also emphasize

8 that plaintiff expressly acknowledges that he did not include specific allegations and references

9 to Dr. Dazo until he appealed his grievance to the director's level of review.  Again, they stress

10 that plaintiff's allegations concerned only events that occurred after he filed his initial grievance.

11 Finally, defendants emphasize that plaintiff did not contend in his opposition that he had

12 exhausted his administrative remedies against Dr. Lee, and therefore, implicitly concedes that he

13 did not.

14 V.  Discussion

15            Plaintiff filed five medical appeals while at CSP-Folsom, but only one of his

16 appeals, FSP 05-01516 which was originally filed on or about October 17, 2005, reached the

17 director's level before plaintiff filed this lawsuit.  Plaintiff's second appeal reached the director

18 level approximately four months after plaintiff filed this suit, and plaintiff's third, fourth, and

19 fifth appeals have yet to reach the director's level.  Accordingly, defendants' motion to dismiss

20 hinges on whether plaintiff's first administrative appeal was sufficient to exhaust his

21 administrative remedies with respect to the claims presented in this action.

22            In his initial grievance the following:

23       **A.  Describe Problem**:  I have attempted to obtain follow up
         medical care since my arrival here at CSP-Folsom on 9-16-05 by
24       submitting two requests for health care.  This is for a
         thyroidectomy I received on 7-25-05 and it was determined to be
25       papillary carcinoma on 8-19-05.  I have since received no follow
         up care at all.

26

**B. Action Requested**: I would like to request treatment such as but not limited to testing of my lymph nodes to see if the cancer has spread, is there any thyroid tissue left, treatment for my diminished voice, and referral to an oncologist or cancer specialist.

This grievance included sufficient detail to put prison officials on notice that plaintiff was claiming that he had attempted to receive follow-up care for his thyroidectomy and had received either no care or inadequate care.  Prison officials would not have been anymore aware of the problem about which plaintiff was complaining had he re-started the grievance process each time he saw one of the defendants and continued to receive allegedly inadequate medical care.

Repeated exhaustion of the same grievance is unnecessary to satisfy the PLRA exhaustion requirement.  Prisoners are not required to file and exhaust a separate grievance each time they allegedly receives inadequate medical care for an ongoing condition.  See Gomez v. Winslow, 177 F. Supp. 2d 977 (N.D. Cal. 2001).  In Gomez, the plaintiff claimed that defendants had been deliberately indifferent to his medical care needs in violation of the Eighth Amendment. Id. at 978.  In his initial grievance, Gomez wrote "Inadequate medical attention to a serious medical need." Id. at 979.  Gomez further explained that he had been diagnosed with hepatitis C and had not yet received treatment even though he had sent numerous medical requests to staff. Id. at 979.  The defendants moved for judgment on the pleadings, arguing that Gomez failed to comply with the PLRA exhaustion requirement because he did not exhaust his three distinct claims that defendants failed to timely diagnose his hepatitis, failed to timely treat his illness, and failed to provide him with adequate information about treatment.  Id. at 981-82.  Rejecting defendants' argument, the court held that Gomez's claim had been exhausted.  Id. at 982.  The court explained that "Rather than distinct causes of action, allegations that defendants failed to notify Gomez that he tested positive for hepatitits C antibodies, begin treatment for a matter of years, or provide him with adequate information are simply aspects of the inadequate medical treatment he notified corrections officials about in his administrative appeals."  Id. at 982.  The court emphasized that the purpose of exhaustion is to provide prison officials with notice of

1  problems in the prison, so they can take appropriate action. Id. at 982.  The court concluded that

2  Gomez had made it sufficiently clear to prison officials through his grievance that he was

3  concerned about inadequate medical treatment for his heptatitis. Id. at 982.[3]

4        In the present case, defendants rely heavily on the fact that plaintiff filed his initial

5  grievance before he was seen by any of the defendant physicians.  They argue that plaintiff did

6  not exhaust his administrative remedies because he did not grieve the alleged conduct or

7  treatment by defendants in his initial grievance.  The nature of plaintiff's claim, not whether or

8  when plaintiff saw particular defendants or named particular defendants in his grievance, is the

9  paramount consideration in the exhaustion analysis.  Since filing his initial grievance, plaintiff

10  has continuously asserted in his appeals that he has received inadequate post-thyroidectomy

11  follow-up care.  Plaintiff presents the same claim in his complaint before this  court.  This court

12  finds that plaintiff's allegations against the defendants named in this action are encompassed in

13  his administrative grievance which he properly exhausted prior to filing suit.

14        Moreover, neither the PLRA nor CDC procedures require plaintiff to repeatedly

15  exhaust his claim of ongoing inadequate medical care, and the court is prohibited from imposing

16  such a requirement.  See Jones, 127 S. Ct. at 922-23.[4]  In the present case, defendants' argument

17

18      [3] Defendants' argument for repeat exhaustion might well be more persuasive where a
plaintiff is alleging a number of unrelated claims, such as a medical care claim and failure to
19  protect claim.  See Gomez, 177 F. Supp. 983. n.3.  But here plaintiff has alleged only one claim
for inadequate medical care.

20      [4] In Jones, two prisoners filed suits that were subsequently dismissed because they had
not identified each defendant in their administrative grievances.  127 S. Ct. at 922.  Rejecting the
21  "name-all-defendants" rule, the Court held that "exhaustion is not per se inadequate simply
because an individual later sued was not named in the grievances."  Id. at 923.  The Court
22  explained that nothing in the PLRA requires that the plaintiff name all of the defendants during
the grievance process.  Id. at 922.  The Court noted that the PLRA only requires exhaustion of
23  "such remedies as are available."  Id. at 922 (quoting 42 U.S.C. § 1997(e)).  In addition, the
Court explained that "Nothing in the MDOC [Michigan Department of Corrections] policy itself
24  supports the conclusion that the grievance process was improperly invoked simply because an
individual later named as a defendant was not named at the first step of the grievance process."
25  Id. at 922.  The Court observed that, at the time the prisoners had filed their grievances, the
Michigan Department of Corrections policy only told prisoners to "be as specific as possible."
26  Id. at 922.

1   for repeat exhaustion of the same ongoing claim would require the court to impose on plaintiff a

2   judicially-created rule similar to the "name-all-defendants" rule rejected by the Supreme Court in

3   Jones.  As noted above, California state prisoners may appeal "any departmental decision, action,

4   condition, or policy which they can demonstrate as having an adverse effect upon their welfare."

5   Cal. Code Regs. tit. 15, § 3084.1(a).  The language of the regulation is included in the first

6   sentence on the standard inmate appeal form:  "You may appeal any policy, action or decision

7   which has a significant adverse affect [sic] upon you."  The form merely instructs the inmate to

8   "Describe Problem" and state the "Action Requested."  Nowhere does the form tell prisoners

9   when a grievance is premature or when a grievance must be repeated.  Nowhere does the form

10  instruct prisoners as to who must be named in the grievance.  If the prisoner proceeds to the

11  second level after receiving a response at the first level, he is required only to explain why he is

12  dissatisfied with the response he received.  At the third level, he is required only to "add data or

13  reasons for requesting a Director's Level Review."  The PLRA and the CDC procedures make no

14  mention of repeat exhaustion for an ongoing claim.[5]  See Jones, 127 S. Ct. at 923 (where prison

15  grievance regulations make no mention of naming particular officials, imposing such a

16  prerequisite to proper exhaustion is unwarranted); Lewis v. Mitchell, 416 F. Supp. 2d 935, 941-

17  42 (S.D. Cal. 2005) (holding that the CDC 602 appeal form does not require a prisoner to name

18  or identify specific prison officials).

19          Finally, if plaintiff was required to repeatedly exhaust his ongoing claim of

20  inadequate medical care, the recognized goals of the exhaustion requirement would be thwarted.

21  As the Supreme Court has explained, one of the primary benefits of exhaustion is to allow a

22  prison to address complaints about the programs it administers before being subject to suit and

23  thereby reducing litigation to the extent complaints are satisfactorily resolved.  See Jones, 127 S.

24  Ct. at 923; see also Gomez, 177 F. Supp. at 982.  Promoting early notice to prison officials who

25

26          [5]  Moreover, to the extent that defendants' argument is based on a "name-all-defendants"
    rule, it fails under the Supreme Court's holding in Jones.

13

1  prisoners may later sue is not the purpose of the exhaustion requirement.  See Jones, 127 S. Ct. at

2  923 (citing Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the

3  primary purpose of a grievance is to alert prison officials to a problem, not to provide personal

4  notice to a particular official that he may be sued; the grievance process is not a summons and

5  complaint that initiates adversarial litigation.")).[6]  If plaintiff were required to repeatedly exhaust

6  the same claim after each instance of allegedly inadequate medical care with respect to his

7  ongoing condition, the prison's ability to address his complaint would not be advanced.  As

8  noted above, plaintiff's initial grievance included sufficient allegations to alert the prison of his

9  concerns about the follow-up care for his thyroidectomy.  If the court imposed on plaintiff a

10 repeat-exhaustion rule for the same ongoing claim, the court would be inviting litigation rather

11 than reducing it.  A repeat-exhaustion rule would set the stage for dozens of lawsuits addressing

12 the same basic claim of inadequate medical care with respect to an ongoing condition.

13         Defendants bear the burden of raising and proving the affirmative defense of

14 failure to exhaust administrative remedies.  Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1117-19

15 & nn.9 & 13.  Defendants have not carried their burden in this case and therefore, their motion to

16 dismiss plaintiff's complaint with prejudice should be denied.

17

---

18        [6] Thus, in addressing the issue of what an administrative grievance must contain in order
   to satisfy the PLRA's exhaustion requirement the Seventh Circuit has held that:

19

20             [a] grievance suffices if it alerts the prison to the nature of the
              wrong for which redress is sought.  As in a notice-pleading system,
21            the grievant need not lay out the facts, articulate legal theories, or
              demand particular relief.  All the grievance need do is object
22            intelligibly to some asserted shortcoming.  [The plaintiff's] two
              grievances were comprehensible and contained everything that
23            Illinois instructed him to include.  Defendants can't complain that
              he failed to do more.

24

25 Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).  See also Irvin v. Zamora, 161 F. Supp. 2d
   1125, 1135 (S.D. Cal. 2001) ("As long as the basic purposes of exhaustion are fulfilled, there
26 does not appear to be any reason to require a prisoner plaintiff to present fully developed legal
   and factual claims at the administrative level.").

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

Also before the court is plaintiff's motion for leave to file a supplemental complaint. Local Rule 15-220 provides that "every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by Court order shall be retyped and filed so that it is complete in itself without reference to the prior or superceded pleading." E.D. Local Rule 15-220. Plaintiff is advised that he may amend his complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). However, plaintiff's amended complaint will supersede the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended pleading is filed, the original pleading no longer serves any function in the case. Id.; see also E.D. Local Rule 15-220. Although the allegations of this pro se complaint are held to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), plaintiff will be required to comply with the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of California. Accordingly, plaintiff's motion to file a supplemental pleading will be denied without prejudice to filing an amended complaint that is complete in itself.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that plaintiff's January 10, 2007 motion to file a supplemental complaint is denied.

IT IS HEREBY RECOMMENDED that defendants' February 14, 2007 motion to dismiss be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

1    that failure to file objections within the specified time may waive the right to appeal the District

2    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: May 14, 2007.

4

5    _____

6    DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

7    DAD:9
     hamp0966.57

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26